UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

IN RE GENERALI COVID-19 TRAVEL
INSURANCE LITIGATION.                    20-md-2968 (JGK)

                                         OPINION AND ORDER

_____


JOHN G. KOELTL, District Judge:

    The plaintiffs brought this putative class action against

the defendants, Generali US Branch and Customized Services

Administrators, Inc. (together, "Generali"), alleging breach of

insurance contracts and related non-contract claims.

    The plaintiffs alleged that they incurred losses because

they planned and paid for travel that was canceled because of

restrictions that were occasioned by Covid-19. They claim that

their losses were covered by trip insurance contracts issued by

Generali because their losses were "Covered Events." The

plaintiffs point to two alleged Covered Events: (1) a

"Quarantine" provision of the relevant policy, or (2) the

provision for "unavailable accommodations due to . . . natural

disaster." The defendants contend that the trip cancelations

were not occasioned by those Covered Events and that, in any

event, the government regulations that brought about the

plaintiffs' losses fell within an explicit Exclusion in the

Policies for any loss under the Policy "caused by, or resulting

1

from, . . . travel restrictions imposed for a certain area by governmental authority." Generali now moves to dismiss the action as to plaintiffs Clonts, Garner, Johner, Sharma, Oglevee, Morris, and Shrader.

Generali also moved to compel arbitration as to Oglevee, as well as certain other plaintiffs who are not the subjects of Generali's motion to dismiss. The plaintiffs as to whom Generali moved to compel arbitration purchased their trips and the corresponding insurance through Vrbo.com, except Oglevee, who purchased only her accommodations and the corresponding insurance on Vrbo.com. Oglevee purchased her flights and the corresponding insurance on FlightHub. The basis of Generali's motion to compel arbitration is an arbitration clause in the terms of service of Vrbo.com, which provided that Generali was a beneficiary of the clause. The motion to compel arbitration is addressed in a concurrently-filed opinion, but for the purposes of this motion it is relevant that the motion to compel arbitration is granted as to Oglevee with respect to her claims arising from her purchase of travel insurance through Vrbo.com, and denied as to Oglevee's other claims.

For the reasons explained below, the motion to dismiss is **granted** as to Clonts, Garner, Johner, Sharma, Morris, and Shrader. The motion to dismiss is **denied** as moot as to certain

claims by Oglevee that are subject to arbitration, and **granted** as to Oglevee with respect to her other claims.

## I.
### A.

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the allegations in the complaint are accepted as true and all reasonable inferences must be drawn in the plaintiff's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007).[1] The Court may also consider documents that are integral to the complaint or incorporated by reference, and those facts or documents of which the court can take judicial notice. Casey v. Odwalla, Inc., 338 F. Supp. 3d 284, 293 (S.D.N.Y. 2018). This includes contracts, Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 71–72 (2d Cir. 1995), and executive orders, Michael Cetta, Inc. v. Admiral Indem. Co., 506 F. Supp. 3d 168, 173 (S.D.N.Y. 2020), which the parties also agree are subject to judicial notice.

### B.

The following facts are taken from the Consolidated Class Action Complaint (the "Complaint"), Generali's insurance policies (the "Policies"), which are referenced in and integral to the Complaint, and various executive orders referenced in the Complaint.

---

[1] Unless otherwise noted, this Opinion omits all alterations, citations, footnotes, and internal quotation marks in quoted text.

1.

Each of the plaintiffs planned trips scheduled for 2020 for which they purchased travel insurance from Generali. The insurance coverage provided was specified in the Policies, and did not differ among the plaintiffs in most key respects.

The Policies provided that Generali would compensate the insureds for certain losses that occurred if the insured was prevented from taking a trip due to an unforeseeable "Covered Event[] that occur[ed] before departure." Compl. ¶ 44. In all policies, the term "Covered Event" included "Being . . . Quarantined." The Policies defined the term Quarantine as "the enforced isolation of [the insured or their] Traveling Companion, for the purpose of preventing the spread of illness." Id. at ¶ 46. In some policies, the term "Covered Event" also included the insured's "Accommodations at [their] destination [being] made inaccessible due to fire, flood, volcano, earthquake, hurricane or other natural disaster." Id. ¶¶ 46-50.

After listing the Covered Events, the Policies noted that this coverage was "subject to the General Exclusions." The section entitled "General Exclusions" provided that Generali would "not pay for any loss under th[e] Policy, caused by, or resulting from" certain listed events. These General Exclusions included "travel restrictions imposed for a certain area by

governmental authority." Id. ¶ 51; Zurlage Decl. Ex. A, ECF No. 29-1, at 10-11.

The Policies also included a provision that after a 10-day policy-examination period, the insured's payment was non-refundable, id. at 6, and a provision that the insurance coverage was "single pay, single term." Id. at 13. The Policies contained various coverage limits.

**2.**

During the first week of 2020, a new coronavirus ("Covid-19") was identified in China.[2] By March, Covid-19 had spread so broadly that the World Health Organization declared it a pandemic. On March 2, Generali posted a notice on its website that it considered Covid-19 to have been foreseeable as of January 29.

Over the course of 2020, countries, states, and localities issued orders to attempt to limit the spread of the disease. The plaintiffs were all slated to take the trips for which they had purchased insurance during 2020. All of these trips were canceled over the course of the year. The plaintiffs filed claims under the Policies, seeking compensation under the Policies. Generali denied the claims in an email, explaining that the Policies only provided benefits for specific, listed

_____

[2] Unless otherwise specified, all dates in this Opinion are from 2020.

events, including Quarantines as the Policies defined the term,
and that stay-at-home orders were not considered Quarantines
under the Policies. The email also explained that the Policies
did not cover losses resulting from travel restrictions by a
governmental authority or by an event that could have reasonably
been foreseen.

**3.**

The plaintiffs brought this putative class action against
Generali. They sought to represent four distinct classes[3]:

- Clonts, Garner, Johner, Sharma, and Oglevee sought to
  represent the Quarantine Class, a class of "[a]ll persons
  who purchased or obtained Defendants' travel protection
  policies without a pandemic exclusion and were prevented
  from taking their trips because of a quarantine order,
  stay-at-home order, or similar restriction related to the
  COVID-19 pandemic";
- Clonts, Garner, and Johner sought to represent the Natural
  Disaster Class, a class of "[a]ll persons who purchased or
  obtained Defendants' travel protection policies without a
  pandemic exclusion that list inaccessible accommodation as
  a covered event, and were prevented from taking their trips
  due to their accommodation being inaccessible as a result
  of the COVID-19 natural disaster";
- Clonts, Garner, Johner, and Sharma sought to represent the
  Early 2020 Purchaser Class, a class of "all persons who
  purchased or obtained Defendants' travel protection
  policies between January 29 and March 11, 2020, without a
  pandemic exclusion, and were unable to take their trip for
  reasons related to the COVID-19 pandemic"; and
- Morris and Shrader sought to represent the Unearned
  Premiums Class, a class of "[a]ll persons who purchased or
  obtained Defendants' travel protection policies and whose
  trips were cancelled and fully refunded prior to their

---

[3] The would-be class representatives who are subject to the motion
to compel arbitration and who are not the subjects of the motion
to dismiss are not included in this list.

departure date, but who have not received premium refunds
from Defendants for post-departure risks."

In each case, the plaintiffs sought to represent nationwide
classes or, should the classes not be certified nationwide,
statewide classes. Each putative class brought distinct claims,
including claims for breach of contract, unjust enrichment,
conversion, bad faith, and breach of the duty of good faith and
fair dealing. The plaintiffs sought relief including a return of
all or part of the insurance premiums they paid, compensation
for the losses they incurred, and declaratory relief.

Generali now moves to dismiss the action as to Clonts,
Garner, Johner, Sharma, Oglevee, Morris, and Shrader. The claims
brought by each putative class and named plaintiff are reflected
in the following chart, which identifies the plaintiffs, their
states of residence, and their claims. The chart only identifies
the claims subject to the motion to dismiss and excludes the
claims subject to the motion to arbitrate.

| Name | Applicable Law | Quarantine Class | Natural Disaster Class | Early 2020 Purchaser Class | | | | Unearned Premium Class | | |
|------|----------------|------------------|------------------------|------------------|------------|-----------|-----------------------------------------------------|------------------|------------|-----------------------------------------------------|
| **Count:** | | I | II | III | IV | V | VI | VII | VIII | IX |
| | | Breach of Contract | Breach of Contract | Unjust Enrichment | Conversion | Bad Faith | Breach of the Duty of Good Faith and Fair Dealing | Unjust Enrichment | Conversion | Breach of the Duty of Good Faith and Fair Dealing |
| Clonts | Georgia | Yes | Yes | Yes | Yes | Yes | Yes | | | |
| Garner | Oregon | Yes | Yes | Yes | Yes | Yes | Yes | | | |
| Johner | Missouri | Yes | Yes | Yes | Yes | Yes | Yes | | | |
| Sharma | Utah | Yes | | Yes | Yes | Yes | Yes | | | |
| Oglevee | Pennsylvania | Yes | | | | | | | | |
| Morris | Florida | | | | | | | Yes | Yes | Yes |
| Shrader | Pennsylvania | | | | | | | Yes | Yes | Yes |

**II.**

The plaintiffs raise both contract and non-contract claims. The plaintiffs do not dispute the defendants' statement that each of their claims are governed by the laws of their home states. See ECF No. 28 at 11. Accordingly, the Court will apply to each plaintiff's claims the law of that plaintiff's home state. See Monterey Bay Mil. Hous., LLC v. Ambac Assurance Corp., 531 F. Supp. 3d 673, 705 (S.D.N.Y. 2021).

Because the motion to compel arbitration is granted in part as to plaintiff Oglevee, the motion to dismiss is denied as moot with respect to the claims to be arbitrated — namely, the claims arising out of her transaction on Vrbo.com. To the extent this Opinion addresses Oglevee's claims, it addresses only those claims arising out of her transaction on FlightHub.

### A. Contract Claims

The plaintiffs seek compensation under the Policies, which they allege provide for coverage for their losses. In insurance actions, to state a prima facie claim, the insured must show that the claim is within the scope of the coverage, and the applicability of an exclusion is an affirmative defense. See Allstate Ins. Co. v. Grayes, 216 Ga. App. 419, 420 (1995); FountainCourt Homeowners' Ass'n v. FountainCourt Dev., LLC, 264 Or. App. 468, 480 (2014), aff'd, 380 P.3d 916 (Or. 2016); Nixon v. Life Invs. Ins. Co. of Am., 675 S.W.2d 676, 679 (Mo. Ct. App.

1984); <u>Cincinnati Ins. Co. v. AMSCO Windows</u>, 921 F. Supp. 2d 1226, 1233 (D. Utah 2013), <u>supplemented</u>, No. 2:10-cv-00542, 2013 WL 12141330 (D. Utah Sept. 23, 2013), and <u>aff'd</u>, 593 F. App'x 802 (10th Cir. 2014); <u>State Farm Fire & Cas. Co. v. Est. of Mehlman</u>, 589 F.3d 105, 111 (3d Cir. 2009) (applying Pennsylvania law). A court may grant a motion to dismiss based on an affirmative defense where "'the complaint itself establish[es] the circumstances required as a predicate to a finding' that the affirmative defense applies." <u>In re Sept. 11 Prop. Damage & Bus. Loss Litig.</u>, 481 F. Supp. 2d 253, 258 (S.D.N.Y. 2007).

A valid exclusion applies to all of the plaintiffs' claims, arising out of both the "Quarantine" Covered Event and the Covered Event for "Accommodations at [their] destination [being] made inaccessible due to . . . natural disaster." Therefore, the Policies do not cover the plaintiffs' claims. Moreover, almost all of the plaintiffs have not stated facts showing even a prima facie entitlement to coverage due to the alleged Covered Events for Quarantine or their accommodations being inaccessible due to natural disaster.

**1.**

The plaintiffs have failed to state facts showing that they are entitled to compensation under the Policies because the defendants have shown as a matter of law that the plaintiffs' claims are barred by the valid General Exclusion.

Each Policy has a section entitled "General Exclusions." That section provides that Generali "will not pay for any loss under this Policy caused by, or resulting from . . . travel restrictions imposed for a certain area by governmental authority." Zurlage Decl. Ex. A, ECF No. 29-1, at 10-11. The Policies further specify that their "coverage is subject to the General Exclusions." Id. at 18. Thus, under the language of the Policies, if a loss falls within both a coverage provision and a General Exclusion, the General Exclusion controls, and Generali is not contractually required to pay for the losses.

All of the losses fall within this General Exclusion. To the extent Covid-19 "prevented [the plaintiffs] from taking [their] Trips," it was only by means of the orders to which the plaintiffs make reference. See Compl. ¶¶ 117-19 ("As a result of the pending declarations [of states of emergency, Clonts's] . . . reservation was cancelled."); id. ¶ 124 ("As a result of the declarations [of states of emergency and] Oregon's stay-at-home order, . . . Garner cancelled her trip[.]"); id. ¶ 96 ("[D]ue to the . . . tourist ban, Johner . . . cancelled her reservation."); id. ¶¶ 82-84 ("Sharma's flights were cancelled" after "Hawaii issued a mandatory quarantine" and "Salt Lake City adopted a stay-at-home order."); id. ¶¶ 99-101 ("Oglevee cancelled her trip when faced with travel impediments in Pennsylvania and Florida," namely, both states declaring states

11

of emergency.). Thus, on a plain reading of the Policies, the plaintiffs' cancellations were all caused by governmental orders, which are travel restrictions for which the Policies exclude coverage. There is no plausible construction of the Exclusion that does not cover the plaintiffs' cancellations.

The plaintiffs argue that the presence of both coverage and an exclusion is an "inconsistency" that must be resolved in favor of the insured. This argument is without merit. The plaintiffs cite Todd v. Missouri United School Insurance Council, 223 S.W.3d 156, 163 (Mo. 2007), for the proposition that inconsistencies should be resolved in favor of the insured. But that case also noted that "[i]nsurance policies customarily include . . . exclusions that exclude from coverage otherwise covered risks. . . . [T]he use of definitions and exclusions is not necessarily contradictory or inconsistent." Id. at 162-63. In fact, Todd found an exclusion to be applicable, and denied coverage. Id. at 164; see also Mays v. Transamerica Ins. Co., 103 Or. App. 578, 585 (1990) (holding that an exclusion does not render a contract ambiguous); Alf v. State Farm Fire & Cas. Co., 850 P.2d 1272, 1275 (Utah 1993) (same); cf. Fid. Nat. Title Ins. Co. of N.Y. v. OHIC Ins. Co., 275 Ga. App. 55, 58 (2005); John J. Curry & Son v. Harleysville Mut. Ins. Co., 11 Pa. D. & C.4th 521, 527 (Com. Pl. 1991). Likewise, there is no "inconsistency" in this case. The Policies make clear that if a Covered Event

overlaps with a General Exclusion, the General Exclusion controls. This is neither inconsistent nor ambiguous.

Contrary to the plaintiffs' suggestion, the Exclusion does not render the coverage illusory. For an exclusion to render coverage illusory, it must eliminate all or most of the coverage. See, e.g., Cynergy, LLC v. First Am. Title Ins. Co., 706 F.3d 1321, 1327 (11th Cir. 2013) (finding that, under Georgia law, coverage was not illusory where an exclusion did not "eviscerate" or "completely abrogate[]" coverage); Emps.- Shopmens Loc. 516 Pension Tr. v. Travelers Cas. & Sur. Co. of Am., 235 Or. App. 573, 588-89 (2010) (finding that coverage was not illusory where an exclusion did not "completely eviscerate[]" coverage); Endurance Am. Specialty Ins. Co. v. Brown, 487 F. Supp. 3d 774, 780 (W.D. Mo. 2020) (finding coverage not illusory where an exclusion did not "exclude coverage for virtually all liability"); Atl. Cas. Ins. Co. v. Zymblosky, No. 1167 MDA 2016, 2017 WL 3017728, at *6 (Pa. Super. Ct. July 17, 2017) (finding that coverage was not illusory where there remained coverage for some acts); cf. Harris v. Zurich Holding Co. of Am., No. 2:05-cv-482, 2006 WL 120258, at *6 (D. Utah Jan. 17, 2006) (noting that coverage was illusory only where an exclusion "wholly eviscerate[d]" coverage).

In this case, the Exclusion does not eliminate all or most of the coverage. There are Quarantines that do not fall within

the Exclusion and for which the Policies would therefore provide coverage. For example, a person who came into contact with an infected person and was therefore required not to leave their home would be in "enforced isolation . . . for the purpose of preventing the spread of illness," and therefore would be under a true Quarantine. But such a requirement could not be described as a "travel restriction imposed for a certain area." It therefore would not fall within the Exclusion, and would be covered by the Policy. In short, true Quarantines would be covered by the Policies and not covered by the Exclusion. The Exclusion would not render coverage for a true Quarantine illusory.

Likewise, there are many ways accommodations could be rendered inaccessible due to natural disaster that do not involve an intervening government-issued travel restriction. A hurricane could severely damage a prospective accommodation or render an access road to an accommodation inaccessible. Accordingly, the Exclusion does not render the coverage provided by the Policies illusory, but rather is simply a valid carveout.

Finally, the plaintiffs argue that the existence of epidemic or pandemic exclusions in other Generali policies implies that the Exclusion in the plaintiffs' policies does not subsume the Covid-19 pandemic. But the fact that Generali has chosen to exclude epidemics or pandemics in other policies does

14

not render the Exclusion in these Policies ambiguous. The Exclusion unambiguously covers "travel restrictions imposed for a certain area by governmental authority," and that plainly covers the orders at issue in this case. Accordingly, the plaintiffs' allegations regarding Generali's other policies do not permit an inference that the Exclusion might not apply to the plaintiffs' claims.

For all these reasons, the Exclusion is valid and it unambiguously covers the plaintiffs' claims. Therefore, the defendants have shown as a matter of law based on the unambiguous terms of the Policies that the Exclusion bars the plaintiffs' contract claims.

### 2.

Moreover, the plaintiffs have not pleaded facts sufficient to show a prima facie entitlement to compensation due to a Quarantine. Coverage under the Policies is limited to losses that occur if the insured is "prevented from taking [a] Trip due to" pre-departure Covered Events. Compl. ¶¶ 44, 46. Thus, to allege entitlement to compensation due to a Quarantine, the plaintiffs must allege a (i) pre-departure (ii) Quarantine that (iii) prevented them from taking their trip. None of the plaintiffs has alleged such facts.

All the plaintiffs allege that their places of origin and destinations declared states of emergency.[4] The plaintiffs also allege the following orders:

| Plaintiff | Departure Date | Origin | Issues at Origin | Destination | Issues at Destination |
|---|---|---|---|---|---|
| Clonts | May 8, 2020 | Georgia | Stay-at-home order which expired before scheduled departure | Florida | Isolation requirement from areas with "substantial community spread" |
| Garner | Apr 24, 2020 | Oregon | Stay-at-home order | Florida | Stay-at-home order and isolation required from areas with substantial community spread |
| Johner | Sep 8, 2020 | Missouri | | Costa Rica | Arrival ban ongoing at time of departure |
| Sharma | May 13, 2020 | Utah | Stay-at-home order which expired before scheduled departure | Hawaii | Quarantine requirement on arrival |
| Oglevee | Mar 17, 2020 | Pennsylvania | Stay-at-home order issued after scheduled departure | Florida | Stay-at-home order and isolation required from areas with substantial community spread; additional Key West restrictions issued after scheduled arrival |

---

[4] While other plaintiffs also alleged that they were entitled to Quarantine coverage, Generali moved to compel arbitration of those claims rather than to dismiss them. Possible dismissal of those claims is therefore not addressed in this Opinion.

First, the stay-at-home orders alleged did not constitute Quarantines. "Quarantine" is defined in the Policies as "the enforced isolation of you or your Traveling Companion, for the purpose of preventing the spread of illness." Id. at ¶ 46. The following stay-at-home orders in particular were not Quarantines:

- Georgia, id. ¶ 118 (Clonts). This required people to "remain in their place of residence," but permitted people to leave their homes to obtain supplies, exercise, and perform the "minimum necessary activities to maintain the value of a business," which included "remaining open to the public."
- Florida, id. (Clonts, Garner, and Oglevee). The Florida order provides: "[A]ll persons in Florida shall limit their movements and personal interactions outside of their home to only those necessary to obtain or provide essential services or conduct essential activities."
- Oregon, id. ¶ 123 (Garner). The Oregon order provides: "It is essential . . . that, to the maximum extent possible, individuals stay at home . . . . Individuals are directed to minimize travel."
- Salt Lake County, Utah, id. ¶ 83 (Sharma). The order "discourage[s]" non-essential travel. It permits, however, leaving the home for certain activities, including social activities, with some limitations.
- Utah, id. ¶ 83 (Sharma). The Complaint alleges that the Utah order "directed residents to stay at home as much as possible" and to "limit travel to only essential travel."
- Allegheny County, Pennsylvania, id. ¶ 102 (Oglevee). The order directed residents to "stay at home except as needed to access, support or provide life-sustaining business, emergency or government services," or to "engage in outdoor activities."

None of these stay-at-home orders created a state of enforced isolation. In all instances, the plaintiffs were permitted to leave their homes for several purposes, including

to see other people. The plaintiffs were thus not forced to remain isolated, and the stay-at-home orders did not create a state of enforced isolation. See In re Arch Ins. Co. Ski Pass Ins. Litig., No. 4:20-md-2955, 2021 WL 4191464, at *6-8 (W.D. Mo. Sept. 8, 2021) (finding that stay-at-home orders were not a quarantine within the meaning of an insurance policy); Depasquale v. Nationwide Mut. Ins. Co., No. 20-cv-5370, 2021 WL 1815078, at *4-5 (S.D. Ohio May 6, 2021) (finding that Oregon's restrictions were not a quarantine within the meaning of an insurance policy); Cassell v. Snyders, 458 F. Supp. 3d 981, 1002 (N.D. Ill. 2020) (finding that "enforced isolation" required a person to be "set apart" (citing Daniel v. Putnam County, 38 S.E. 980, 981 (Ga. 1901))), aff'd, 990 F.3d 539 (7th Cir. 2021); see also In re United Specialty Ins. Co. Ski Pass Ins. Litig., No. 20-md-2975, 2021 WL 4974981, at *5-6 (N.D. Cal. Oct. 26, 2021) (finding that closing a resort was not a quarantine within the meaning of an insurance policy).

Indeed, most of the cases interpreting the word "quarantine" in other contexts have found it to exclude stay-at-home orders. See Cassell, 458 F. Supp. 3d at 1002 (collecting cases); Antietam Battlefield KOA v. Hogan, 461 F. Supp. 3d 214, 229 n.17 (D. Md. 2020); McGhee v. City of Flagstaff, No. 20-cv-8081, 2020 WL 2308479, at *3 (D. Ariz. May 8, 2020) (applying a statutory definition).

The plaintiffs' argument that the plaintiffs were under Quarantine because self-enforced isolation constitutes enforced isolation is without merit. Items comprising a list should be read to share common attributes. E.g., Winegard v. Newsday LLC, No. 19-cv-4420, 2021 WL 3617522, at *5 (E.D.N.Y. Aug. 16, 2021). In this case, the phrase "enforced isolation" defines the term "Quarantine," which appears in the context of an insurance policy amidst a list of events that arise externally to the insured to prevent the insured from taking their trip. A "self-enforced" isolation would fit poorly within this list. It is clear, therefore, that the phrase "enforced isolation" implies an external enforcer. Cf. Watson v. Oppenheim, 301 So. 3d 37, 42 (Miss. 2020). For all of these reasons, the stay-at-home orders are not Quarantines within the meaning of the Policies.

Second, declarations of states of emergency did not "prevent[] the plaintiffs from taking [their] Trip[s]," and therefore did not trigger coverage under the Policies. All the plaintiffs allege declarations of states of emergency at their origins and/or destinations. But without more, such declarations do not prevent a person from traveling. None of the plaintiffs alleges tangible consequences of the declarations of states of emergency themselves that actually prevented them from taking their trips. Accordingly, states of emergency could not be

described as Quarantines, and do not trigger coverage under the Policies.

Finally, many of the restrictions the plaintiffs rely on would not provide coverage under the Quarantine provision because they did not arise before the plaintiff's departure, or they did not prevent the plaintiff from taking the trip, or both.

As a result, none of the plaintiffs has stated a claim for coverage based on "Quarantine" as a Covered Event. More particularly:

- Clonts alleges a stay-at-home order in Georgia that expired before her trip began, id. ¶ 118, and which therefore cannot have "prevented [her] from taking [her] Trip." She also alleges that Florida imposed a stay-at-home order, as well as a quarantine requirement for travelers coming from "areas of substantial community spread," id., and that her reservation was canceled because of this. However, this does not amount to an allegation that Clonts was herself "being . . . Quarantined" "before [her] departure."
- Garner alleges that Florida, her destination, imposed a quarantine requirement for travelers coming from "areas of substantial community spread." Id. ¶ 123. However, she does not allege that Oregon, her state of origin, was such an area within the meaning of the Florida order. This allegation therefore does not constitute an allegation that she was "prevented from taking [her] Trip." Moreover, neither state's stay-at-home order or declaration of a state of emergency constituted a Quarantine.
- Johner alleges that "Costa Rica barred [her] from entering." Id. ¶ 95. But this ban cannot be described as an "enforced isolation": while the ban prevents Johner from entering Costa Rica, the ban in no way compels her to remain in isolation. For the same reason, Missouri's declaration of a state of emergency

also did not create a state of enforced isolation, and
in any event did not prevent Johner from taking her
trip.

- Sharma alleges that his home state of "Utah maintained
  a stay-at-home directive from March 27 to May 1." Id.
  ¶ 83. But his trip to Hawaii was scheduled to begin
  May 13. Id. ¶ 80. Accordingly, Sharma does not allege
  that Utah's stay-at-home order "prevented [him] from
  taking [his] Trip." Moreover, neither Utah's stay-at-
  home order nor its state-of-emergency declaration was
  a Quarantine. Sharma also alleges that "Hawaii issued
  a mandatory quarantine for all travelers entering the
  state." Id. ¶ 82. But because the quarantine would
  only have taken effect after Sharma's entry to the
  state, it is not covered by the Policy.
- Oglevee alleges "Pennsylvania issued a stay-at-home
  order . . . to begin March 23." Id. ¶ 102. But neither
  this nor the declared "disaster emergency" was a
  Quarantine. She also alleges that Key West was
  "preparing to shut down tourism and close hotels,"
  which shutdown was announced March 19 to go into place
  March 22. Id. ¶ 101. But her trip was scheduled to
  begin March 17. Id. ¶ 98. Because her Policy covered
  only events that occurred before departure, none of
  these events are covered by the Policy.

Therefore, none of the plaintiffs has stated a claim for

Quarantine coverage.

### 3.

For similar reasons, Clonts does not state a prima facie

claim for coverage arising from their accommodations being made

inaccessible due to a natural disaster. The Policies define

"inaccessible" as meaning that the accommodations "cannot be

reached by [the insured's] original mode of transportation."

Compl. ¶ 48. The stay-at-home orders in Georgia and Florida

expired before Clonts's trip began, and the quarantine

requirement imposed by Florida for travelers coming from areas

of substantial community spread did not cover travelers coming from Georgia. As such, none of these made it impossible for her to reach her accommodations by her original means of transportation. Accordingly, Clonts has not stated a claim for coverage arising from her accommodations being made inaccessible due to natural disaster.

Because all of the claims are barred by the Exclusion, and almost all of the claims are also barred because they fail to allege sufficient facts to show a Covered Event, none of the plaintiffs has stated a claim for coverage under the Policies, and the plaintiffs' contract claims are **dismissed.**

### B. Unjust Enrichment Claims

The Early 2020 Purchaser and Unearned Premium plaintiffs (in other words, all the plaintiffs who are the subjects of the motion to dismiss except Oglevee) claim they are entitled to complete or partial refunds of their premiums because the defendants otherwise would have been unjustly enriched. The Early 2020 Purchaser plaintiffs who are the subjects of the motion to dismiss — Clonts, Garner, Johner, and Sharma — seek full premium refunds on the theory that the plaintiffs conferred a benefit on Generali — the premiums — and that it would be unjust for Generali to retain that benefit because Generali knew that the plaintiffs would not "receive the benefit of their bargain." The Unearned Premiums plaintiffs who are the subjects

of the motion to dismiss — Morris and Shrader — seek partial premium refunds. They reason that insureds are typically entitled to premium refunds where the risk covered by a policy did not attach, and that the post-departure risks covered by the Policies did not attach. Accordingly, they argue, it would be unjust for Generali to retain the portion of the premium corresponding to post-departure risks. All of these claims lack merit.

1.

Under the laws of Missouri and Utah, an unjust enrichment claim is foreclosed if the dispute is covered by the terms of the contract. See, e.g., Bellon Wrecking & Salvage Co. v. Rohlfing, 81 S.W.3d 703, 711–12 (Mo. Ct. App. 2002); Boyd v. Margolin, 421 S.W.2d 761, 767 (Mo. 1967); AGTC Inc. v. CoBon Energy LLC, 447 P.3d 123, 130 (Utah Ct. App. 2019). Missouri and Utah law govern the claims of Johner and Sharma, respectively.

Under Missouri law, Johner's claim is specifically addressed by her Policy. Missouri law honors express contractual terms as to refunds of insurance premiums. Kan. City Coll. of Osteopathic Med. v. Emps.' Surplus Lines Ins. Co., 581 F.2d 299, 303–04 (1st Cir. 1978) (conceding that Missouri follows the rule that premiums are refundable where no risk attached, but finding that an express term in the policy limiting refunds overrode this default rule). Johner's Policy expressly stated that the

premium she paid was not refundable after ten days. Under
Missouri law, this term is controlling, and the Court must honor
this choice by the parties. Johner's contract therefore governed
the precise dispute. As such, her insurance contract precludes
her unjust enrichment claim. Accordingly, Johner has not stated
a claim for unjust enrichment.

Under Utah law, Sharma's claim is also specifically
addressed by his Policy. Under Utah law, courts may not rewrite
an insurance agreement where it is clear. Uzelac v. Fire Ins.
Exch., 420 P.3d 150, 156 (Utah Ct. App. 2018). The Policy
unambiguously states that it is non-refundable after ten days
have passed. The contract therefore clearly covers the dispute,
and Sharma has not stated a claim for unjust enrichment.

**2.**

Georgia and Oregon use a slightly broader formulation of
the same rule: an unjust enrichment claim is foreclosed wherever
the subject matter of the dispute is governed by a contract.
See, e.g., Ceasar v. Wells Fargo Bank, N.A., 322 Ga. App. 529,
534 (2013); Kashmir Corp. v. Patterson, 43 Or. App. 45, 48
(1979), aff'd, 616 P.2d 468 (Or. 1980). Those states' laws
govern the unjust enrichment claims of Clonts and Garner,
respectively.

For both Clonts and Garner, there is a contract — the
plaintiff's Policy — whose subject matter is the subject matter

of the dispute. Accordingly, the unjust enrichment claims of Clonts and Garner are foreclosed by the existence of their Policies.

Additionally, the Policies of Clonts and Garner address the specific dispute. Under the laws of Georgia and Oregon, courts interpret insurance contracts based on their plain meaning, and cannot rewrite them. See, e.g., Bell v. Liberty Mut. Fire Ins. Co., 319 Ga. App. 302, 305 (2012); Silver Eagle Co. v. Nat'l Union Fire Ins. Co., 423 P.2d 944, 947 (Or. 1967). Both Policies specifically provided that the premiums were non-refundable after ten days. Clonts and Garner seek premium refunds. The Policies therefore clearly cover the dispute, and unjust enrichment claims are unavailable to Clonts and Garner.

**3.**

The plaintiffs argue that their claims should not be dismissed because unjust enrichment claims can be pleaded in the alternative. See, e.g., Gordon v. Arch Ins. Co., No. 21-cv-1911, 2021 WL 2186392, at *3 (E.D. Pa. May 28, 2021); Anderson v. Travelex Ins. Servs., Inc., No. 8:18-cv-362, 2019 WL 1932763, at *3 (D. Neb. May 1, 2019). But this argument is without merit as applied in this case. While Federal Rule of Civil Procedure 8(d) permits plaintiffs to plead alternative and inconsistent claims, courts dismiss unjust enrichment claims pleaded in the alternative where there is no dispute as to the validity of the

agreement. See, e.g., MF Glob. Holdings Ltd. v.

PricewaterhouseCoopers LLP, 43 F. Supp. 3d 309, 317 (S.D.N.Y.

2014). Because Clonts, Garner, Johner, and Sharma do not dispute

the validity of the Policies or argue that the Policies do not

govern their disputes, there is no viable claim for unjust

enrichment.

For these reasons, Clonts, Garner, Johner, and Sharma have

not stated claims for unjust enrichment, and these claims are

dismissed.

**4.**

Morris and Shrader seek to recover the portion of their

payments that related to the insurance coverage they purchased

for events that might occur after their departure. They argue

that Generali never had to bear the risks associated with that

portion of their trips. Therefore, they argue that Generali was

unjustly enriched by the portion of the premiums that was

attributable to that portion of their insurance coverage.

As in Georgia and Oregon, in Florida and Pennsylvania, an

unjust enrichment claim is foreclosed wherever the subject

matter of the dispute is governed by the contract. See, e.g.,

Diamond "S" Dev. Corp. v. Mercantile Bank, 989 So. 2d 696, 697

(Fla. Dist. Ct. App. 2008); Pierce v. State Farm Mut. Auto. Ins.

Co., No. 14-cv-22691, 2014 WL 7671718, at *5 (S.D. Fla. Dec. 17,

2014) (applying this principle in the insurance context); Wilson

Area Sch. Dist. v. Skepton, 895 A.2d 1250, 1254-55 (Pa. 2006) (holding that a party could not recover a refund on an unjust enrichment theory where "the relationship between the parties [wa]s founded upon a contract," even where the contract did not address the availability or unavailability of refunds); Grudkowski v. Foremost Ins. Co., 556 F. App'x 165, 170 (3d Cir. 2014) (applying Wilson in the insurance context). Florida and Pennsylvania law govern the claims of Morris and Shrader, respectively.

As with Clonts and Garner, for both Morris and Shrader, there is a contract — the plaintiff's Policy — whose subject matter is the subject matter of the dispute. Accordingly, the unjust enrichment claims of Morris and Shrader are foreclosed by the existence of their Policies, and Morris and Shrader have not stated unjust enrichment claims.

Morris and Shrader argue that this rule is overridden where the risk covered by the Policies did not attach, and that in such a case, the insureds are entitled to a refund of the portion of the premium corresponding to the risk that did not attach. Thus, the argument goes, because Morris and Shrader did not take their trips and the post-departure risks were severable from the pre-departure risks, the premiums should be refunded to the extent they correspond to post-departure risks. They cite Anderson, 2019 WL 1932763, at *3, Gordon, 2021 WL 2186392, at

*3, Haas v. Travelex Ins. Servs. Inc., No. 220-cv-6171, 2021 WL
3682309, at *4-5 (C.D. Cal. Aug. 19, 2021), and Edelson v.
Travel Ins. Int'l Inc., No. 21-cv-323, 2021 WL 4334075, at *3-5
(S.D. Cal. Sept. 23, 2021), as adhering to this reasoning. But
these cases are distinguishable.

First, Anderson, applying Arizona law, and Haas and
Edleson, applying California law, found that the dispute was not
specifically addressed in the contract. Anderson, 2019 WL
1932763, at *3; Haas, 2021 WL 3682309, at *7; Edleson, 2021 WL
4334075, at *4. Because of this, they held that the unjust
enrichment claim could proceed. Anderson, 2019 WL 1932763, at
*3; Haas, 2021 WL 3682309, at *7; Edleson, 2021 WL 4334075, at
*5. But Florida and Pennsylvania do not require that a dispute
be specifically addressed by a contract to preclude an unjust
enrichment claim; they require only that a contract govern the
subject matter of the dispute. Moreover, the Policies of Morris
and Shrader do in fact address the specific dispute. Under the
laws of Florida and Pennsylvania, courts interpret insurance
contracts based on their plain language, and cannot rewrite
terms. See, e.g., SafePoint Ins. Co. v. Hallet, 322 So. 3d 204,
207 (Fla. Dist. Ct. App. 2021); Wall Rose Mut. Ins. Co. v.
Manross, 939 A.2d 958, 962 (Pa. Super. Ct. 2007). In contrast to
Anderson, 2019 WL 1932763, at *3, Haas, 2021 WL 3682309, at *7,
and Edleson, 2021 WL 4334075, at *4, the Policies of Morris and

Shrader expressly provided that the premiums were non-refundable
after ten days. Morris and Shrader seek premium refunds. The
Policies therefore clearly cover the dispute, and unjust
enrichment claims are unavailable.

Second, Morris and Shrader have not shown that Florida and
Pennsylvania follow the reasoning applied by the cases cited by
the plaintiffs — namely that, notwithstanding a contract term
expressly providing that refunds are unavailable, a premium
refund is available with respect to any part of the risk covered
by a policy that did not attach, if that part of the risk can be
severed from the part of the risk that did attach. While Florida
and Pennsylvania courts have sometimes severed insurance
policies that purported to be inseverable, they have done so in
cases where an entire policy would be voided if the risks are
not severable. See, e.g., Nat'l Union Fire Ins. Co. v. Cubberly,
67 So. 133, 134 (Fla. 1914); Bird v. Penn Cent. Co., 341 F.
Supp. 291, 292-93 (E.D. Pa. 1972). The plaintiffs cite no
Florida case applying the severability principle in order to
find that some of the risk had not attached, such that a partial
premium refund might be appropriate. And in Thomas v. Charles
Baker & Co., 60 F.2d 1057, 1059-61 (E.D. Pa. 1932), the court in
fact held that the entire risk attached on delivery of the
policy, such that the insurer was entitled to keep the premium.
In Gordon, which applied Pennsylvania law, an unjust enrichment

claim survived dismissal, but the court did not explain why such a cause of action was available, and Gordon is therefore unpersuasive.

Finally, neither Morris nor Shrader has alleged a severable policy. The language of the Policies suggests that the Policies are not severable: in addition to providing that the Policies are non-refundable after ten days, the Policies note that the insured has purchased "single pay, single term" insurance. In deciding whether to treat a policy as severable notwithstanding its language, courts have relied on factors such as (1) whether the different risks are separately valued, Nat'l Union Fire Ins. Co. v. Cubberly, 67 So. 133, 134 (Fla. 1914); (2) whether the premiums are paid in gross, Unity Life Ins. Co. v. Beasley, 13 S.E.2d 32, 34 (Ga. 1941); and (3) whether the risks are interdependent, Consumer's Money Ord. Corp. of Am. (Mo.) v. N.H. Ins. Co., 386 S.W.2d 674, 677 (Mo. App. 1964). Applied to the Policies of Morris and Shrader, these factors do not support severability, particularly in light of the Policies' clear language. While the Policies of Morris and Shrader do itemize pre- and post-departure coverage, both plaintiffs paid a single premium in gross, and the pre- and post-departure risks were interdependent: the possibility of trip cancellation affected the likelihood of post-departure risks arising, a possibility that may be priced into the cost of the insurance. Accordingly,

neither Morris nor Shrader has pleaded facts showing that their Policies were severable. As such, the entire risk attached when the Policies were purchased.

For the foregoing reasons, Morris and Shrader have not stated claims for unjust enrichment, and these claims are dismissed.

### C. Bad Faith and Breach of the Duty of Good Faith and Fair Dealing Claims

Clonts, Garner, Johner, and Sharma allege bad faith and breach of the duty of good faith and fair dealing.[5] Their claims are governed by the law of Georgia, Oregon, Missouri, and Utah, respectively. On this point, these states' laws are functionally identical: essentially, claims that an insurer acted in bad faith or breached the duty of good faith and fair dealing by denying insurance benefits fail where the denial is reasonable.

Georgia law allows parties to seek damages for bad faith refusals to pay insurance claims. See Assur. Co. of Am. v. BBB Serv. Co., 576 S.E.2d 38, 41 (Ga. 2002). However, "[a] defense going far enough to show reasonable and probable cause for making it would vindicate the good faith of the company . . . . Penalties for bad faith are not authorized where the insurance

---

[5] Morris and Shrader also brought claims for breach of the duty of good faith and fair dealing. However, their Opposition narrowed their claims to unjust enrichment claims. ECF No. 38 at 37 n.35. Therefore, the claims for breach of the duty of good faith and fair dealing by Morris and Shrader are dismissed.

company has any reasonable ground to contest the claim . . . ."
Id.[6]

Oregon law provides that "a claim for breach of the duty of
good faith may be pursued independently of a claim for breach of
the express terms of the contract," and that an insurer
therefore has a duty to determine, in good faith, whether a
claim is covered, and to refrain from arbitrarily" denying
benefits under a policy. McKenzie v. Pac. Health & Life Ins.
Co., 847 P.2d 879, 881 (Or. 1993); accord Ivanov v. Farmers Ins.
Co. of Or., 185 P.3d 417, 421-22 (Or. 2008). However, courts
have held that only a "patently unreasonable[,] . . . truly
beyond-the-pale interpretation of contractual language" can
"support a breach of good faith claim" grounded in the
interpretation of a policy. Veloz v. Foremost Ins. Co. Grand
Rapids, Mich., 306 F. Supp. 3d 1271, 1281 (D. Or. 2018) (denying
a breach-of-good-faith claim even where the court ultimately
rejected the insurer's interpretation of the policy). The
implied covenant of good faith and fair dealing "cannot
contradict an express contractual term, nor otherwise provide a

---

[6] The quote ends with the clause, "and where there is a disputed
question of fact." BBB Serv. Co., 576 S.E.2d 41. This "and"
formulation does not mean that there must be a disputed question
of fact: the language can be traced back to U.S. Fid. & Guar. Co.
v. Woodward, 164 S.E.2d 878 (1968), which treated a disputed
question of fact as an example of a reasonable ground on which the
insurer could contest the claim. Id. at 881.

remedy for an . . . act that is permitted expressly by the contract." Zygar v. Johnson, 10 P.3d 326, 330 (Or. 2000).

In Missouri, the plaintiffs concede, breach of the duty of good faith and fair dealing by failing to pay an insurance claim is not a standalone tort, although there is a statute that provides enhanced remedies where the denial is "without reasonable cause or excuse." Overcast v. Billings Mut. Ins. Co., 11 S.W.3d 62, 66-67 (Mo. 2000). Missouri also embraces the general principle that the covenant prohibits "opportunistic behavior, that is, the exploitation of changing economic conditions to ensure gains in excess of those reasonably expected at the time of contracting." Spencer Reed Grp., Inc. v. Pickett, 163 S.W.3d 570, 574 (Mo. Ct. App. 2005).

Utah law implies into insurance contracts a duty of good faith and fair dealing. Beck v. Farmers Ins. Exch., 701 P.2d 795, 801 (Utah 1985). That duty requires insurers to "diligently investigate the facts to enable [them] to determine whether a claim is valid," and to "fairly evaluate the claim." Id. However, "if an insurer denies an 'insured's claim that is fairly debatable, then the insurer is entitled to debate it and cannot be held to have breached the implied covenant if it chooses to do so.'" Prince v. Bear River Mut. Ins. Co., 56 P.3d 524, 534-35 (Utah 2002).

The plaintiffs argue that Generali denied their claims in bad faith because they sent boilerplate claim-denial emails and performed no individualized investigation of the claims. But Generali's denials were reasonable — indeed, they were valid. Moreover, the plaintiffs in this case do not allege any facts that Generali should have investigated. The factual disputes in the case appear to be very limited; it is the law that is at issue. As such, the plaintiffs have not alleged bad faith or breach of the duty of good faith and fair dealing based on Generali's denial of their claims.

Accordingly, Clonts, Garner, Johner, and Sharma do not state claims for bad faith or breach of the covenant of good faith and fair dealing under the laws of their respective states.

### D. Conversion Claims

Clonts, Garner, Johner, and Sharma also bring conversion claims.[7] These claims are governed by the law of Georgia, Oregon, Missouri, and Utah, respectively. The claims fail for several reasons.

First, the plaintiffs' conversion claims fail because the plaintiffs have no property interest in the money they seek to

---

[7] Morris and Shrader also brought claims for conversion. However, their Opposition limited their claims to unjust enrichment claims. ECF No. 38 at 37 n.35. Therefore, the claims for conversion by Morris and Shrader are dismissed.

recover. While the precise definition of conversion varies slightly across states, all of the states whose law is at issue on this motion to dismiss define it in substance as a willful, unlawful interference with the chattel of another. Taylor v. Powertel, Inc., 250 Ga. App. 356, 358 (2001); Becker v. Pac. Forest Indus., Inc., 229 Or. App. 112, 116 (2009); Manzer v. Sanchez, 985 S.W.2d 936, 940 (Mo. Ct. App. 1999); Fibro Tr., Inc. v. Brahman Fin., Inc., 974 P.2d 288, 295-96 (Utah 1999). In other words, conversion requires that the plaintiff be entitled to the chattel at issue. Because the plaintiffs have not stated breach of contract claims, claims for bad faith, unjust enrichment claims, or any other claims that would entitle them to some payment, they are not entitled to the money they seek, and therefore this element of conversion is not met.

The conversion claims of Clonts and Johner fail for the additional reason that there is no claim for conversion of money in Georgia and Missouri unless the money is specifically identifiable. Taylor, 551 S.E.2d at 769-70 (Georgia); Walker v. Hanke, 992 S.W.2d 925, 933 (Mo. Ct. App. 1999). The money in this case is not separated or earmarked in any way, and therefore cannot be the subject of a conversion claim.

The conversion claims of Clonts, Johner, and Sharma fail for the additional reason that they are barred by the economic loss rule. Under that rule, there can be no tort claim where the

injury alleged is an economic injury tied to a contract.
Georgia, Missouri, and Utah have all adopted this rule. See,
e.g., Gen. Elec. Co. v. Lowe's Home Centers, Inc., 608 S.E.2d
636, 637 (Ga. 2005); Captiva Lake Invs., LLC v. Ameristructure,
Inc., 436 S.W.3d 619, 628 (Mo. Ct. App. 2014); Davencourt at
Pilgrims Landing Homeowners Ass'n v. Davencourt at Pilgrims
Landing, LC, 221 P.3d 234, 242 (Utah 2009).

Accordingly, the plaintiffs have not stated conversion
claims, and the conversion claims must be dismissed.

### E. Declaratory Judgment Claims

Finally, the plaintiffs seek "a declaration of the parties'
respective rights and duties under the Policies and request the
Court to declare Defendants' conduct unlawful and in material
breach." The Court will entertain a declaratory judgment claim
only "(1) when the judgment will serve a useful purpose in
clarifying and settling the legal relations at issue," or "(2)
when it will terminate and afford relief from the uncertainty,
insecurity, and controversy giving rise to the proceeding."
Continental Cas. Co. v. Coastal Sav. Bank, 977 F.2d 734, 737 (2d
Cir. 1992). The plaintiffs' claims for a declaratory judgment in
this case are entirely duplicative of their substantive claims,
and therefore would neither serve a useful purpose in clarifying
the parties' legal relations nor afford relief from uncertainty.
See Fleisher v. Phoenix Life Ins. Co., 858 F. Supp. 2d 290, 302–

03 (S.D.N.Y. 2012). Moreover, a declaratory judgment requires "a valid legal predicate." Chevron Corp. v. Naranjo, 667 F.3d 232, 244 (2d Cir. 2012). Because none of the plaintiffs' claims has merit, there is no such predicate in this case. Accordingly, the plaintiffs' claims for declaratory judgment are dismissed.

For the foregoing reasons, Generali's motion to dismiss is **granted**.

### Conclusion

The Court has considered all of the parties' arguments. To the extent not specifically addressed, the claims are either moot or without merit. In summary, the motion to dismiss is **granted** as to Clonts, Garner, Johner, Sharma, Morris, and Shrader. The motion to dismiss is **denied** as moot as to Oglevee with respect to the claims to be arbitrated. The motion to dismiss is **granted** as to Oglevee with respect to her claims not subject to arbitration. The Clerk is directed to close Docket No. 27.

**SO ORDERED.**
**Dated:** New York, New York
December 21, 2021

John G. Koeltl
United States District Judge