UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

IN RE GENERALI COVID-19 TRAVEL
INSURANCE LITIGATION.                    20-md-2968 (JGK)

                                         OPINION AND ORDER

_____


JOHN G. KOELTL, District Judge:

The plaintiffs brought this putative class action against
the defendants, Generali US Branch and Customized Services
Administrators, Inc. (together, "Generali"), alleging breach of
insurance contracts and related non-contract claims. The
plaintiffs alleged that they incurred losses because they
planned and paid for travel that was canceled because of
restrictions that were occasioned by Covid-19. The plaintiffs
allege that their losses were covered by insurance policies (the
"Policies") issued by Generali but Generali failed to pay the
amounts due under the Policies.

Generali moved to compel arbitration as to plaintiffs
Dziagwa, Flanigan, Matthew and Kari Nixon, Oglevee, Robbins, and
Swafford. These plaintiffs purchased their trips and the
corresponding insurance through Vrbo.com, except Oglevee, who
purchased only her accommodations and the corresponding
insurance on Vrbo.com. Oglevee purchased her flights and the
corresponding insurance on FlightHub. The basis of Generali's

1

motion to compel arbitration is an arbitration clause in the terms of service of Vrbo.com, which provided that Generali was a beneficiary of the clause. Generali also moved to dismiss the action as to Oglevee, and certain other plaintiffs who are not the subjects of Generali's motion to compel arbitration. The motion to dismiss is addressed in a concurrently-filed opinion.

For the reasons explained below, the motion to compel arbitration is **granted** as to Dziagwa, Flanigan, Matthew and Kari Nixon, Robbins, and Swafford. The motion to compel arbitration is also **granted** as to Oglevee with respect to her claims arising out of her purchase of travel insurance through Vrbo.com. The motion to compel arbitration is **denied** as moot as to Oglevee's other claims.

## I.

### A.

In deciding a motion to compel arbitration, "courts apply a standard similar to that applicable for a motion for summary judgment." Nicosia v. Amazon.com, Inc., 834 F.3d 220, 229 (2d Cir. 2016). Thus, a court should "consider all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits." Id. If there is no "genuine issue of material fact" as to the arbitrability of

the dispute, the Court may decide the motion without a trial.
Schnabel v. Trilegiant Corp., 697 F.3d 110, 113 (2d Cir. 2012).

**B.**

The following facts are taken from sworn declarations;
there is, in any event, no dispute as to the relevant facts
regarding the motion to compel arbitration.

**1.**

Each of the plaintiffs planned trips scheduled for 2020 for
which they purchased travel insurance from Generali. The
insurance coverage provided was specified in the Policies, and
did not differ among the plaintiffs in most key respects. The
Policies included a section entitled "Legal Actions" relating to
the time period for bringing certain claims. Each Policy also
included a section providing that the Policy could "be changed
at any time by written agreement between" the parties, but
noting that only certain executives could "change or waive" its
provisions, which change had to be "endorsed on the policy."

**2.**

The plaintiffs who are the subjects of this motion to
compel arbitration purchased the trips they insured through an
online travel agency called Vrbo, also known as Vrbo.com or
HomeAway.com, except Oglevee, who purchased only the
accommodations portion of her trip on Vrbo.com. She purchased
the airline portion of her trip on FlightHub. In the process of
completing the online purchases through Vrbo, the plaintiffs

clicked a button labeled "Agree & continue" or "Continue." A notice informed the plaintiffs that clicking this button indicated their assent to certain linked terms and conditions (the "Vrbo Terms"). The Vrbo Terms included a section entitled "Disputes; Arbitration," which read as follows:

**19. Disputes; Arbitration.**

HomeAway's right to amend these Terms, in whole or in part, at any time as set forth below in Section 22 does not apply to this "Disputes; Arbitration" section. The version of this "Disputes; Arbitration" section in effect on the date you last accepted the Terms controls.

HomeAway is committed to customer satisfaction, so if you have a problem or dispute, we will try to resolve your concerns. But if we are unsuccessful, you may pursue claims as explained in this section. You agree to give us an opportunity to resolve any disputes or claims relating in any way to the Site, any dealings with our customer experience agents, any services or products provided, any representations made by us, or our Privacy Policy ("**Claims**") by contacting Vrbo Customer Support or 1-877-228-3145. If we are not able to resolve your Claims within 60 days, you may seek relief through arbitration or in small claims court, as set forth below.

**Any and all Claims will be resolved by binding arbitration, rather than in court,** except you may assert Claims on an individual basis in small claims court if they qualify. This includes any Claims you assert against us, our subsidiaries, users or any companies offering products or services through us (which are beneficiaries of this arbitration agreement). This also includes any Claims that arose before you accepted these Terms, regardless of whether prior versions of the Terms required arbitration.

**There is no judge or jury in arbitration, and court review of an arbitration award is limited. However, an arbitrator can award on an individual basis the same damages and relief as a court (including statutory damages, attorneys' fees and costs), and must follow and enforce these Terms as a court would.**

Arbitrations will be conducted by the American Arbitration Association (AAA) under its rules, including the AAA Arbitration Consumer Rules (together, the "AAA Rules"). Payment of all filing, administration and arbitrator fees will be governed by the AAA's rules, except as provided in this section. If your total Claims seek less than $10,000, we will reimburse you for filing fees you pay to the AAA and will pay arbitrator's fees. You may choose to have an arbitration conducted by telephone, based on written submissions, or in person in the state where you live or at another mutually agreed upon location.

By agreeing to arbitration under the AAA Rules, the parties agree, among other things, that the arbitrator, and not any federal, state, or local court or agency, shall have the exclusive power to rule on any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim

To begin an arbitration proceeding, you must send a letter requesting arbitration and describing your Claims to "HomeAway Legal: Arbitration Claim Manager," at Expedia, Inc., 333 108th Ave N.E. Bellevue, WA 98004. If we request arbitration against you, we will give you notice at the email address or street address you have provided. The AAA's rules and filing instructions are available at www.adr.org or by calling 1-800-778-7879.

**Any and all proceedings to resolve Claims will be conducted only on an individual basis and not in a class, consolidated or representative action.** If for any reason a Claim proceeds in court rather than in arbitration **we each waive any right to a jury trial.** The Federal Arbitration Act and federal arbitration law apply to these Terms. An arbitration decision may be confirmed by any court with competent jurisdiction.

Notably, section 19 provided specifically in the third paragraph: "Any and all Claims will be resolved by binding arbitration, rather than in court . . . . This includes any Claims you assert against . . . any companies offering products or services through us (which are beneficiaries of this arbitration agreement)." This section literally applies to claims against Generali, which offered trip insurance through the Vrbo.com website, and a customer could buy the Generali insurance through the Vrbo.com website.

Section 21 of the Vrbo Terms provided that, by purchasing cancelation protection provided by Generali, customers "agree[d] to the terms and conditions under the plan," and included a link to the Generali Policies.

Upon completing their reservations on Vrbo.com, the plaintiffs saw a confirmation page offering the opportunity to purchase insurance for that reservation. Because the plaintiffs availed themselves of that opportunity, the insurance purchase was made on Vrbo's website, using the payment method provided to reserve the accommodation.

3.

During the first week of 2020, a new coronavirus ("Covid-19") was identified in China. By March, Covid-19 had spread so broadly that the World Health Organization declared it a pandemic. The plaintiffs were all slated to take the trips for

6

which they had purchased insurance during 2020. All of these trips were canceled over the course of the year. The plaintiffs filed claims under the Policies, seeking compensation under the Policies. Generali denied the claims.

The plaintiffs brought this putative class action against Generali, alleging breach of contract, unjust enrichment, conversion, bad faith, and breach of the duty of good faith and fair dealing. The plaintiffs sought relief including a return of all or part of the insurance premiums they paid, compensation for the losses they incurred, and declaratory relief. Generali now moves to compel arbitration of those claims brought by Dziagwa, Flanigan, Matthew and Kari Nixon, Oglevee, Robbins, and Swafford.

## II.

The Federal Arbitration Act, 9 U.S.C. §§ 1 et seq., ("FAA") provides that agreements to arbitrate are valid and enforceable, "save upon such grounds as exist at law or in equity for the revocation of any contract." Id. § 2. Validity, revocability, and enforceability are determined by reference to state law. Arthur Andersen LLP v. Carlisle, 556 U.S. 624, 630–31 (2009). The plaintiffs argue that the law of New York, the forum state, applies to the motion to compel arbitration. Because the defendants concede this, the Court will apply the

law of New York. See Monterey Bay Mil. Hous., LLC v. Ambac Assurance Corp., 531 F. Supp. 3d 673, 705 (S.D.N.Y. 2021).

The party seeking arbitration bears the initial burden of showing that there existed an agreement to arbitrate. Hines v. Overstock.com, 380 F. App'x 22, 24 (2d Cir. 2010). The burden then shifts to the party resisting arbitration to show that the agreement is inapplicable or invalid. Id.

In this case, the Vrbo Terms contain an arbitration clause that, on its face, appears to authorize Generali to seek arbitration of the disputes arising out of the plaintiffs' transactions on Vrbo.com. The plaintiffs do not dispute the existence or content of the Vrbo Terms. The plaintiffs also do not dispute that they consented to the Vrbo Terms. See Doctor's Assocs., Inc. v. Jabush, 89 F.3d 109, 114 (2d Cir. 1996) (noting that "an unequivocal denial" is required to "establish a genuine issue" as to the existence of an arbitration agreement). The defendants have therefore met their initial burden with respect to the claims arising out of the transactions on Vrbo.com, and the burden shifts to the plaintiff to show that the agreement is inapplicable or invalid.

In an attempt to meet this burden, the plaintiffs raise five distinct arguments: (1) the dispute is not covered by the Vrbo Terms' arbitration provision because the Policies do not contemplate arbitration; (2) the dispute is not covered by the

Vrbo Terms' arbitration provision because no reasonable person
would have anticipated being bound to arbitrate a dispute with
the defendants; (3) the defendants cannot enforce the
arbitration provision because the plain language of the Vrbo
Terms does not allow them to; (4) the defendants cannot enforce
the arbitration provision because there is no mutuality; and (5)
the defendants cannot enforce the arbitration provision because
they have waived their right to do so. None of these arguments
is persuasive.

**A.**

The plaintiffs first argue that the Policies do not
contemplate arbitration. In fact, they claim, the Policies
"evidence[] an intent _not_ to arbitrate." ECF No. 35 at 9. But
nothing in the Policies affirmatively indicates an intent _not_ to
arbitrate. There is no provision in the Policies that precludes
arbitration. The plaintiffs point to the section entitled "Legal
Actions," but that section relates only to time limitations on
bringing actions, not the forum in which to do so. Zurlage Decl.
Ex. F, ECF No. 29-6, at 13. Accordingly, that section does not
conflict with the arbitration provision in the Vrbo Terms. Nor
does the fact that the Vrbo Terms confer on the defendants the
right to seek arbitration "change" the Policies in violation of
the formalities the Policies require. See _id._ at 14.

Sections 21 and 15 of the Vrbo Terms do not otherwise create a conflict with the Policies. Section 21 of the Vrbo Terms clarifies that by purchasing insurance with Generali, customers "agree to the terms of conditions" of Generali's plan. Huberman Decl. Ex. E, ECF No. 32-5, § 21. But this provision in no way limits the applicability of the Vrbo Terms.

Section 15 of the Vrbo Terms provides:

**15. Links to Third-Party Sites.**

This Site may contain links and pointers to other Internet sites, resources and sponsors of the Site. Links to and from the Site to other third-party sites, maintained by third parties, do not constitute an endorsement by us of any third parties, the third-party sites or the contents thereof. We may also provide tools to allow interaction between the Site and a third-party site, such as a Social Media Site. We are not responsible in any way for such third-party sites or resources and your use of such sites and resources will not be governed by these Terms.

Section 15 also does not preclude arbitration in this case. Section 15 relates to customers' use of third-party sites, resources, or sponsors linked by Vrbo. Section 15 appears to refer to links that take the customer away from the Vrbo site rather than products sold on the Vrbo site. It specifically refers to Social Media Sites. Generali's insurance, which is sold on the Vrbo site, is not similar to such sites, resources, or sponsors.

In any event, even if Generali or its insurance is a "site" or "resource" within the meaning of section 15, this general provision gives way to the extremely specific provisions of section 19, which expressly confers on "companies offering

10

products or services through" Vrbo the right to seek arbitration, and renders them "beneficiaries" of the agreement. See id. § 19; Muzak Corp. v. Hotel Taft Corp., 133 N.E.2d 688, 690 (N.Y. 1956).

The rules of contract construction require an interpretation that gives meaning to every provision of a contract, and if there is any inconsistency between a specific provision of a contract and a general provision, the specific provision must prevail. Id. In this case, section 19 of the Vrbo Terms unambiguously provides that arbitration is required for any "Claims . . . against any companies offering products or services through us (which are beneficiaries of this arbitration agreement)." The general provision that customers' use of third-party sites and resources linked by Vrbo would "not be governed by" the Vrbo Terms is a general provision that does not specifically negate the requirement of arbitration for claims against companies, such as Generali, offering products or services through Vrbo. To allow the general disclaimer to negate the specific requirement of arbitration would render the requirement of arbitration for claims against third-party providers of no effect. That is impermissible and contrary to New York law. Id.

Accordingly, there is no conflict between the Vrbo Terms and the Policies that must be resolved by ignoring the right to

seek arbitration provided by the Vrbo Terms, or even creates an
issue of fact as to the meaning of the Vrbo Terms or the
Policies.

**B.**

Second, the plaintiffs argue that the arbitration provision
in the Vrbo Terms is inapplicable because no reasonable person
would have anticipated being bound to arbitrate a dispute with
the defendants, such that the arbitration provision does not
cover this dispute. The plaintiffs rely on Wexler v. AT&T Corp.,
211 F. Supp. 3d 500, 504 (E.D.N.Y. 2016) to support their
argument. But Wexler is neither controlling nor apposite.

In Wexler, in connection with her purchase of a phone and
wireless service from 'Mobility' (a subsidiary of AT&T Inc.), a
customer agreed to arbitrate all disputes between the parties.
Id. at 501-02. The agreement defined "the parties" to include
affiliates of Mobility. Id. Wexler later began receiving
unsolicited communications from AT&T Corp., a different
subsidiary of AT&T Inc. Id. at 502. She brought suit under the
Telephone Consumer Protection Act ("TCPA"). Id. at 501. Finding
no nexus between the purchase and the TCPA claims, the court
held that, "[n]otwithstanding the literal meaning of the
clause's language, no reasonable person" assenting to the
arbitration agreement would expect to be assenting to

12

arbitrating TCPA claims against a different subsidiary, and denied arbitration. Id. at 504.

Unlike in Wexler, in this case, there is a clear nexus between the agreement and the dispute. Upon completing their reservations, the plaintiffs saw a confirmation page offering the opportunity to purchase insurance for that reservation. Because the plaintiffs availed themselves of that opportunity, the purchase was made on Vrbo's website, using the payment method provided to reserve the accommodation. Both the process and substance of the insurance transaction thus connected the insurance transaction to the reservation transaction. Moreover, in this case, the Vrbo Terms are much more precise than the broad agreement in Wexler, specifically identifying "companies offering products or services through" Vrbo as "beneficiaries of th[e] arbitration agreement." As such, a reasonable person would expect that her consent to arbitration as part of the reservation transaction would extend to the insurance transaction as well.

Accordingly, the close nexus between the agreement and the dispute made it foreseeable that the arbitration provision would apply to transactions collateral to the accommodation transaction, including the purchase of insurance.

13

C.

The plaintiffs next argue that the defendants cannot enforce the arbitration provision because the plain language of the Vrbo Terms does not provide them a mechanism to do so.

The plaintiffs rely on Lawson v. Life of the South Insurance Co., 648 F.3d 1166 (11th Cir. 2011), and Marciel v. Springleaf Financial Services, Inc., No. 14-cv-830, 2014 WL 6453781 (D. Or. Nov. 17, 2014). In both cases, the court refused to permit a third party to enforce the agreement on a third-party beneficiary theory. Lawson, 648 F.3d at 1171; Marciel, 2014 WL 6453781, at *2-6.

But those cases are distinguishable. In both cases, the agreements at issue conferred the right to seek arbitration only on the parties to the agreement. The agreement at issue in Lawson provided that "you or we may choose to have the Dispute resolved by binding arbitration." Lawson, 648 F.3d at 1168. Because neither pronoun referred to the party seeking arbitration, the agreement did not evince "an intent to allow anyone other than the [parties to the agreement] to compel arbitration of a dispute," and no third-party beneficiaries could enforce the agreement. Id. at 1171-72. Similarly, in Marciel, the language of the agreement conferred on the parties thereto the right to seek arbitration, but not on any other

14

party. Accordingly, a third party could not invoke the
arbitration clause. Id. at *1-2, *5-6.

In contrast, the agreement in this case expressly includes
as subject to arbitration claims against "companies offering
products or services through" Vrbo, and adds that those
companies "are beneficiaries of this arbitration agreement."
Huberman Decl. Ex. E, ECF No. 32-5, § 19. The touchstone of
third-party beneficiary status is the intent of the parties to
the agreement. Port Auth. of N.Y. & N.J. v. Brooklyn Union Gas
Co., 119 N.Y.S.3d 191, 194 (App. Div. 2020). This language
clearly expresses an intent to confer on companies offering
their products through Vrbo the right to invoke the arbitration
agreement.

The Court of Appeals for the Second Circuit has found far
less explicit language to confer on a third-party beneficiary
the right to enforce arbitration agreements. In Spear, Leeds &
Kellogg v. Central Life Assurance Co., 85 F.3d 21 (1996), the
court found third-party beneficiary status from language
providing that "any controversy between a member . . . and any
other person arising out of the business of such member . . .
shall at the insistence of any such party be submitted for
arbitration." Id. at 26-27; see also Shapiro v. Sankarsingh, 114
N.Y.S.3d 68, 69 (App. Div. 2019) (finding third-party
beneficiary status to enforce an arbitration agreement under New

York law). And courts in other circuits interpreting language nearly identical to that at issue in this case have reached the same conclusion. See, e.g., Capua v. Air Europa Lineas Aereas S.A. Inc., No. 20-cv-61438, 2021 WL 965500, at *2, *4 (S.D. Fla. Mar. 15, 2021), appeal dismissed for lack of jurisdiction, No. 21-11233-JJ, 2021 WL 4767933 (11th Cir. July 16, 2021); Ward v. Am. Airlines, Inc., 498 F. Supp. 3d 909, 914-15, 922 (N.D. Tex. 2020).[1]

As such, the plain language of the Vrbo Terms grants the defendants the right to enforce the arbitration provision.

### D.

Fourth, the plaintiffs claim that the defendants cannot enforce the arbitration provision because there is no mutuality. They argue that the plaintiffs' inability to compel the defendants to arbitrate renders the arbitration clause a "sham."

But both the Court of Appeals for the Second Circuit and the New York State Court of Appeals have enforced arbitration clauses even where only one party has the capacity to trigger arbitration, expressly rejecting the notion that mutuality is required in the arbitration context. See Doctor's Assocs., Inc. v. Distajo, 66 F.3d 438, 451-53 (2d Cir. 1995); Sablosky v.

---

[1] Generali conceded at oral argument that the policies in these cases did not contain provisions analogous to section 15. However, for the reasons discussed above, section 15 is inapplicable to this dispute, and therefore does not change the analysis.

Edward S. Gordon Co., 535 N.E.2d 642, 646 (N.Y. 1989). Moreover, the cases permitting third-party beneficiaries to enforce arbitration agreements, see, e.g., Spear, 85 F.3d at 25, necessarily imply that mutuality is not required, because the party to the contract could not require the third-party beneficiary to arbitrate.

The plaintiffs cite Hooters of Am., Inc. v. Phillips, 173 F.3d 933 (4th Cir. 1999), Penn v. Ryan's Family Steak Houses, Inc., 269 F.3d 753 (7th Cir. 2001), and In re Zappos.com, Inc. Customer Data Sec. Breach Litig., 893 F. Supp. 2d 1058 (D. Nev. 2012), to support their argument. But these cases are not binding, and they are moreover inapposite. Hooters involved inequitable arbitration procedures that eliminate the neutral forum. Hooters, 173 F.3d at 938. There is no allegation in this case that the forum would not be neutral. In Penn, the court invalidated the underlying contract that the purported third-party beneficiary sought to enforce for lack of consideration. Penn, 269 F.3d at 759. But there is no allegation in this case that the contract between the plaintiffs and Vrbo is invalid. And Zappos found a bilateral arbitration clause invalid because one party could unilaterally revoke the clause. Zappos, 893 F. Supp. 2d at 1065-66. By contrast, this case involves an arbitration clause that was irrevocable.

17

Moreover, there is in fact mutuality in this case. The plaintiffs claim that they could not have sought arbitration against Generali, but Generali argues that the plaintiffs in fact could have sought arbitration against Generali by "send[ing] a letter requesting arbitration" to Expedia, Inc., in accordance with section 19 of the Vrbo Terms. Because the plaintiffs could have sought arbitration against Generali, there is no lack of mutuality.

The Vrbo Terms' conferring on Generali a right to seek arbitration is therefore not void for lack of mutuality.

**E.**

Finally, the plaintiffs argue that the defendants cannot enforce the arbitration provision because the defendants have waived their right to do so. "There is a strong presumption in favor of arbitration, and waiver of the right to arbitration is not to be lightly inferred." Thyssen, Inc. v. Calypso Shipping Corp., S.A., 310 F.3d 102, 104-05 (2d Cir. 2002). A court may only infer that a party has waived the right to arbitrate from its participation in litigation where that participation is so extensive that the other party is prejudiced. Id. at 105. The plaintiff bears the burden of showing waiver. Sweater Bee by Banff, Ltd. v. Manhattan Indus., Inc., 754 F.2d 457, 466 (2d Cir. 1985).

The plaintiffs argue that Generali's motions to dismiss prejudiced them. But Generali filed motions to dismiss in only two of the cases involved in this litigation. See Nixon v. Generali US Branch, No. 20-cv-10779, ECF No. 21 (S.D.N.Y. Aug. 6, 2020); Morris v. Assicurazioni Generali Grp., S.p.A., No. 20-cv-4430, ECF No. 21 (S.D.N.Y. Aug. 24, 2020). The plaintiffs responded to only one. Nixon, No. 20-cv-10779, ECF No. 31 (S.D.N.Y. Sept. 11, 2020). Responding to one motion to dismiss does not sufficiently prejudice the plaintiffs to find that Generali has waived its right to compel arbitration. See Sweater Bee, 754 F.2d at 463 (finding no waiver despite a motion having been "briefed, and decided"); Murray v. UBS Sec., LLC, No. 12-cv-5914, 2014 WL 285093, at *6 (S.D.N.Y. Jan. 27, 2014) (collecting cases).

The plaintiffs likewise cite their participation in case management discussions as constituting prejudice, but courts have refused to find prejudice based on far more substantial litigation. E.g., Rush v. Oppenheimer & Co., 779 F.2d 885, 887 (2d Cir. 1985) (finding no waiver even though the parties had engaged in "rather extensive discovery").

The plaintiffs also claim that the defendants should be deemed to have waived the right to seek arbitration because of the delay in seeking arbitration. But delay itself does not constitute waiver without a showing of prejudice. Id. at 887-88.

The plaintiffs cite a number of cases finding waiver which involved comparable intervals. E.g., Doe v. Trump Corp., 453 F. Supp. 3d 634, 644 (S.D.N.Y. 2020), aff'd, 6 F.4th 400 (2d Cir. 2021) (eight months); PPG Indus., Inc. v. Webster Auto Parts, Inc., 128 F.3d 103, 108 (2d Cir. 1997) (five months); Leadertex, Inc. v. Morganton Dyeing & Finishing Corp., 67 F.3d 20, 26 (2d Cir. 1995) (seven months). But in those cases, much more involved litigation had occurred than in this case. See Doe, 453 F. Supp. 3d at 644 (finding waiver where the court had "fully adjudicated a motion to dismiss, a motion to proceed pseudonymously, multiple motions to seal, and multiple discovery disputes involving the parties and non-parties[,] . . . issued three successive scheduling orders and . . . held multiple conferences"); PPG, 128 F.3d at 108 (noting that delay alone was insufficient to constitute waiver, but finding waiver in light of the number of substantive motions filed and the fact that the parties had begun discovery); Leadertex, 67 F.3d at 26 (finding waiver where the party seeking arbitration had submitted several answers containing defenses and counterclaims and engaged "energetic[ally]" in discovery, and where trial was imminent). In this case, there has been no discovery and the proceedings have primarily involved the consolidation of these different lawsuits into a consolidated complaint and the preparation of a motion to dismiss and a separate motion to compel arbitration.

Because the plaintiffs have not shown prejudice in this case, the delay is insufficient to constitute waiver.

Moreover, given the circumstances of the case, the delay was quite reasonable. The defendants filed their motion to compel arbitration just under a year after the first complaint was filed. In that time, several other cases were filed, and the cases ultimately were consolidated in December 2020. The motion to compel arbitration was thus filed only five months after consolidation. Courts have found delays longer than a year — and certainly longer than five months — not to constitute waiver. See Thyssen, 310 F.3d at 105 (citing cases finding no waiver despite delays of up to three years). In light of these circumstances, Generali's delay was not excessive, and does not constitute waiver.[2]

---

[2] The Supreme Court has granted certiorari in a case captioned Morgan v. Sundance. Morgan v. Sundance, 142 S. Ct. 482 (2021) (No. 21-328). The case presents the question whether prejudice is required to demonstrate a waiver of the right to arbitrate. See Petition for a Writ of Certiorari at i, Morgan, 21-328 (S. Ct. Aug. 27, 2021). Grants of certiorari do not change the law, and a district court remains bound by circuit precedent until the Supreme Court or the court of appeals changes that precedent. See, e.g., United States v. Archer, 531 F.3d 1347, 1352 (11th Cir. 2008); United States v. Lopez-Velasquez, 526 F.3d 804, 808 (5th Cir. 2008). In any event, the plaintiffs have failed to show that the defendants waived their right to seek arbitration. For the reasons given above, the defendants' participation in the litigation is not so extensive that it demonstrates their voluntary and intentional relinquishment of their right to arbitration, the standard the petitioners in Morgan would have the Supreme Court adopt.

For the foregoing reasons, the plaintiffs have failed to satisfy their burden of showing that the arbitration agreement is inapplicable or invalid with respect to the claims that arise out of the plaintiffs' transactions on Vrbo.com. The plaintiffs also do not identify any factual disputes with respect to arbitration that require discovery. See Jabush, 89 F.3d at 114. Generali's motion to compel arbitration is therefore **granted** as to the claims arising out of the plaintiffs' transactions on Vrbo.com.

### F.

Plaintiff Oglevee purchased her accommodation and the corresponding insurance on Vrbo.com, and her flights and the corresponding insurance on FlightHub. At the argument of the current motion, the defendants agreed that the motion to compel arbitration only applied to the cost of the accommodations Oglevee purchased on Vrbo.com, and the cost of the flights she purchased on FlightHub were subject only to the motion to dismiss.

Accordingly, any motion to compel arbitration of Oglevee's claims that did not arise out of her transaction on Vrbo.com is **denied** as moot.

### Conclusion

The Court has considered all of the parties' arguments. To the extent not specifically addressed, the claims are either

22

moot or without merit. In summary, the motion to compel arbitration is **granted** as to Dziagwa, Flanigan, Matthew and Kari Nixon, Robbins, and Swafford. The motion to compel arbitration is also **granted** as to Oglevee with respect to her claims arising out of her purchase of travel insurance through Vrbo.com. The motion to compel arbitration is **denied** as moot as to Oglevee's other claims. The claims subject to arbitration are stayed pending the conclusion of the arbitrations. The Clerk is directed to close Docket No. 30.


**SO ORDERED.**
**Dated:**      New York, New York
              December 21, 2021

                              _____
                                John G. Koeltl
                            United States District Judge